**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

:
BERNARD LAUFGAS                          :
                                         :
        Plaintiff,                       :
                                         :
v.                                       :
                                         :
VICTORIA CURTIS BRAMSON,                 :
(Individually & under color              :
of law) SUSAN CHAMPION,                  :
(Individually & under color              :
of law) LAWRENCE GALLAGHER,              :
(Individually & under color              :
of law) BRUCE PRICE,                     :
(Individually & under color              :
of law) CLARA DURAN,                     :         Civil Action No.: 04-387 (JLL)
(Individually & under color              :
of law) ALANA ONORATO,                   :
(Individually & under color              :         **OPINION**
of law) THE POLICE DEPARTMENT            :
OF PATERSON, (John Doe & Jane            :
Doe unknown 1-100                        :
individually & under color of            :
law) EMPLOYEES OF THE CITY OF            :
PATERSON (John Doe & Jane Doe            :
unknown 1-100 individually &             :
under color of law), THE CITY            :
OF PATERSON, (Individually &             :
under color of law), MICHAEL             :
J. KANE, (Individually &                 :
under color of law), NANCY               :
GALLAGHER, (Individually &               :
under color of law), LINDA               :
PRICE, (Individually & under             :
color of law),                           :
                                         :
        Defendants.                      :
_____:

1

**LINARES**, District Judge.

This matter comes before the Court on Defendants Susan Champion, Laurence Gallagher, Bruce Price, Clara Dura, Alana Onorato, the Police Department of Paterson, the Employees of the City of Paterson, the City of Paterson, Nancy Gallagher, and Linda Price's (collectively "Defendants") motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. This motion was decided without oral argument. Fed. R. Civ. P. 78. For the reasons set forth in this Opinion, Defendants' motion for summary judgment is granted.

## JURISDICTION

This Court asserts jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and over Plaintiff's pendent state claims pursuant to 28 U.S.C. § 1367.

## BACKGROUND

Bernard Laufgas ("Laufgas" or "Plaintiff") filed his Complaint with the Court on January 29, 2004. Plaintiff sets forth seventeen counts in the Complaint, most of which name all Defendants as liable[1]. These claims include, inter alia, federal law claims under 42 U.S.C. sections 1983, 1985, and 1986, and state law claims of malicious prosecution and the like. Plaintiff also seeks injunctive relief.

The remaining Defendants are the City of Paterson ("Paterson"), the Paterson Police Department, the Employees of the City of Paterson, Susan Champion, Esq. ("Champion"), Paterson Corporation Counsel, retired Paterson Police Officer Lawrence Gallagher and his wife Nancy Gallagher, retired Paterson Police Officer Bruce Price and his wife Linda Price, Clara

---

[1]The Court notes that Defendants Victoria Curtis Bramson and Michael J. Kane were dismissed from this action by Order of this Court dated November 24, 2004.

Duran, a former receptionist for Paterson, and Alana Onorato, a receptionist for Paterson.

Plaintiff's cause of action arises out of three separate criminal contempt proceedings held in various New Jersey state courts. In June, 1996, Paterson and its Police Chief, Vincent Amoresano ("Amoresano"), filed a Chancery Division action against Plaintiff based on Plaintiff's alleged disruptive conduct on Paterson property and towards Paterson employees and officials. Paterson and Amoresano sought temporary and permanent restraints against Plaintiff. On July 17, 1996, the Honorable Amos C. Saunders entered temporary restraints restraining Plaintiff from engaging in certain behavior towards Paterson employees and on Paterson public property (the "July 17, 1996 TRO"). The relevant portions of the July 17, 1996 TRO are as follows:

> 1.    [Laufgas] is hereby restrained from contacting or communicating in any fashion, including but not limited to mail, with employees of the City of Paterson, including but not limited to Paterson police officers, at their home address.
>
> 2.    [Laufgas] is restrained from going to the homes of any employees of the City of Paterson including but not limited to Paterson police officers.
> *****
> 4.    [Laufgas] is restrained from personally serving papers of any kind, including, but not limited to summons, complaints, and discovery requests on any employee of the City of Paterson. The Corporation Counsel's office of the City of Paterson shall accept all mailings from the Defendant Bernard Laufgas and acknowledge service of same.
> *****
> 6.    [Laufgas] is restrained from abusive or disruptive conduct while in public buildings of the City of Paterson.

(July 17, 1996 TRO). A trial was conducted from April 20, 1998 to April 29, 1998 before the Honorable Robert J. Passero, J.S.C. Judge Passero found for the plaintiffs and entered a final restraining order on May 5, 1998 (the "Final Restraining Order"). Amoresano v. Laufgas, 171

N.J. 532, 545 (2002).

In the time period between the issuance of the July 17, 1996 TRO and the conclusion of trial, three separate criminal contempt proceedings were initiated against Plaintiff for alleged violations of the July 17, 1996 TRO and contempt in the face of the court. The first contempt charges were instituted by Judge Passero (the "First Contempt Proceeding"). Plaintiff was charged with contempt in the face of the court. On April 29, 1998 Judge Passero issued his order of contempt and sentenced Plaintiff to sixty days in the county jail (the "First Contempt Conviction").

The second contempt proceeding arose from the application of Champion alleging that Plaintiff had violated the July 17, 1996 TRO (the "Second Contempt Proceeding"). On April 20 and April 21, 1998, Judge Passero heard testimony from various witnesses of the City, who "testified that [Laufgas] was loud and verbally abusive when he dropped off documents at the City's law department; that [Laufgas] entered the Mayor's office requesting the name of a certain receptionist; that [Laufgas] parked his vehicle at a curb on a residential street, next to the home of Lieutenant Lawrence Gallagher; a City police officer, while a process server delivered a subpoena directed to the officer's wife; and that the same process server delivered a similar subpoena to the wife of another police officer at that officer's home while [Laufgas] watched from a parked vehicle across the street." Amoresano, 171 N.J. at 547. Judge Passero issued an order to show cause pursuant to Rule 1:10-2 which provides that contempt proceedings shall be instituted upon notice to the alleged contemnor. N.J. R. Ct. 1:10-2. On June 22, 1998, a different judge, the Honorable Ronald G. Marmo, presided over the remainder of the Second Contempt Proceeding and found that Plaintiff had violated various parts of the July 17, 1996 TRO and

4

sentenced him to thirty days in the county jail (the "Second Contempt Conviction"). <u>Amoresano</u>, 171 N.J. at 547. This determination was reached in reliance upon the testimony before Judge Passero on April 20 and April 21, 1998 and further testimony from two witnesses offered by Laufgas. <u>Amoresano</u>, 171 N.J. at 547.

The third contempt proceeding arose from another application by Champion alleging that Plaintiff made intimidating comments to Gallagher, his wife, and Champion (the "Third Contempt Proceeding"). The Honorable Frank M. Donato presided over the Third Contempt Proceeding and found Plaintiff guilty of contempt (the "Third Contempt Conviction"). On July 20, 1998 the court sentenced Laufgas to sixty days in the county jail.

Plaintiff appealed the three adjudications of contempt. The Appellate Division affirmed all three. Plaintiff then appealed to the New Jersey Supreme Court. By Opinion issued January 29, 2002, the New Jersey Supreme Court affirmed two of the three convictions, determining that Plaintiff's guilt with respect to the First and Third Contempt Convictions had been demonstrated beyond a reasonable doubt and that the sentences imposed were just. <u>Amoresano</u>, 171 N.J. at 560. The Court reversed the Second Contempt Conviction on the basis that Plaintiff did not have notice or opportunity to properly prepare cross-examination of the State's witnesses. <u>Amoresano</u>, 171 N.J. at 558.  The Court remanded the matter to the trial court for further proceedings. <u>Id.</u> at 561.

The Complaint alleges violations of his First Amendment rights to freedom of assembly and speech, Fifth Amendment rights to procedural and substantive due process, Sixth Amendment rights to access to the courts, Eighth Amendment right to be free from cruel and unusual punishment, Fourteenth Amendment rights to equal protection and due process, and his

rights secured by Article I of the New Jersey Constitution, pursuant to 42 U.S.C. § 1983, 1985 and 1986. Plaintiff also sets forth state law claims for malicious prosecution, abuse of process, negligent infliction of emotional distress, and breach of duty.

## LEGAL STANDARD

Fed. R. Civ. P. 56(c) provides for summary judgment when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996). Alternately, summary judgment will be granted when the evidence on the record "is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. Jersey Cent. Power & Light Co. v. Lacey Township, 772 F.2d 1103, 1109 (3d Cir. 1985). The non-moving party cannot rest on mere allegations and must instead present actual evidence that establishes a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 256-57; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995); Sound Ship Bldg. Corp. v. Bethlehem Steel Co., 533 F.2d 96, 99 (3d Cir. 1976), cert. denied, 429 U.S. 860 (1976). In considering a motion for summary judgment, all evidence submitted must be viewed in the light most favorable to the party opposing the motion. Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 330 (3d Cir. 1995). However, even if the facts are undisputed, "summary judgment may not be granted ... if there is a disagreement over what inferences can be reasonably drawn from the facts." Ideal Dairy Farms, Inc. v. John Labatt, Ltd., 90 F.3d 737, 744 (3d Cir. 1996) (quoting Nathanson v. Med.

<u>Coll. of Pa.</u>, 926 F.2d 1368, 1380 (3d Cir. 1991).

The issue before the Court is to determine whether any genuine issues of material fact exist and whether Defendants are entitled to judgment as a matter of law.

## <u>ANALYSIS</u>

**A.**    **Statute of Limitations**

Defendants argue that all of Plaintiff's claims are time-barred with the exception of his state and federal claims for malicious prosecution. However, Defendants' legal arguments contained in the moving brief pertain only to Plaintiff's § 1983 claims.[2] Thus, the Court will continue only with an analysis of whether any of Plaintiff's § 1983 claims are time-barred. Plaintiff argues that his claims were timely filed since the New Jersey Supreme Court issued its Opinion on January 29, 2002 and Plaintiff filed his Complaint with this Court on January 29, 2004.

As previously noted, Plaintiff filed the instant Complaint on January 29, 2004. Plaintiff's federal claims stem from the Second Contempt Proceeding which was held, in relevant part, before Judge Passero on April 20 and April 21, 1998 and concluded on June 22, 1998 before Judge Marmo. The New Jersey Supreme Court reversed the holding of Judge Marmo on the basis that Laufgas was not properly given the opportunity to confront and cross-examine the State's witnesses in front of Judge Marmo. <u>Amoresano</u>, 171 N.J. at 556-57. Since Judge Marmo relied

---

[2]Although Defendants purportedly move for summary judgment on the basis that *all* of Plaintiff's claims (with the exception of claims for malicious prosecution) are time-barred, Defendants' moving brief only contains legal arguments which pertain to Plaintiff's § 1983 claims. (Def. Br. at 23-24).

exclusively on the *transcripts* of the proceedings before Judge Passero and heard only two live witnesses, the Court determined that Plaintiff's right to confront and cross-examine the prior witnesses was abridged. Id.

Plaintiff alleges that Defendants violated his First, Fifth, Sixth, Eighth, and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.  Plaintiff also alleges that Defendants violated his right to obtain witnesses secured by the New Jersey Constitution in violation of 42 U.S.C. § 1983. These claims are set forth in Counts One, Four, Seven, and Ten of the Complaint. Such claims arise out of the Second Contempt Proceeding held on April 20 and April 21, 1998 and June 22, 1998 before Judge Passero and Judge Marmo and the resulting Second Contempt Conviction. Plaintiff alleges that the State's institution of the Second Contempt Proceeding constituted retaliation in violation of his right to free speech, violated his right to procedural and substantive due process, violated his right to subpoena witnesses, constituted cruel and unusual punishment, and violated his equal protection rights in violation of 42 U.S.C. § 1983.

There is no established statute of limitations for claims pursuant to 42 U.S.C. § 1983. As such, Courts must apply the state law statute of limitations pertaining to personal injury actions. Wilson v. Garcia, 471 U.S. 261, 280 (1985). Accordingly, the New Jersey two-year statue of limitations for personal injury causes of action, N.J.S.A. § 2A:14-2, must be applied to Plaintiff's section 1983 claims. Cito v. Bridgewater Twp. Police Dep't, 892 F.2d 23, 25 (3d Cir. 1989). Under New Jersey law, the two-year statute of limitations begins to run on the accrual of Plaintiff's claims. N.J.S.A. § 2A:14-2. The Court must next determine when Plaintiff's section 1983 claims accrued.

"A federal civil rights action accrues when the plaintiff knew or had reason to know of the injury that constitutes the basis of the action." Rolax v. Whitman, 175 F. Supp. 2d 720, 727 (D.N.J.,2001) (citing Deary v. Three Un-Named Police Officers, 746 F.2d 185, 197, n. 16 (3d Cir.1984)). The Court has thoroughly reviewed Plaintiff's Complaint and submissions to the Court and determines that for each of Plaintiff's § 1983 claims, the injury which constituted the basis of the action occurred between April and June, 1998, during the pendency of the Second Contempt Proceeding. To this Court, it appears that Plaintiff's allegations with respect to his right to free speech, right to due process, right to be free from cruel and unusual punishment, right to equal protection of the laws, and right to subpoena witnesses all relate to the fact that Plaintiff was unable to confront and cross-examine the State's witnesses before Judge Marmo.[3] After Judge Marmo adjudicated the Second Contempt Proceeding and issued his thirty-day sentence Plaintiff then knew, or had reason to know, of the injuries which constitute the basis of his claims. Rolax, 175 F. Supp. 2d at 727. The Court determines that these actions thus accrued, at the latest, on June 22, 1998 and pursuant to N.J.S.A. § 2A:14-2, became time-barred on June 22, 2000.

Plaintiff, in his brief, argues that he did not discover that a basis for an actionable claim existed until the New Jersey Supreme Court issued its Opinion on his appeal on January 29, 2002. (Pl. Br. Opp'n at 40). However, this argument is only relevant with respect to Plaintiff's claim for malicious prosecution since an element of that claim is a termination of the matter in favor of the plaintiff. The New Jersey Supreme Court's discussion of and ultimate reversal of

---

[3]To the extent that Plaintiff alleges that his right to free speech was infringed by the July 17, 1996 TRO, this issue will be addressed infra.

Judge Marmo's decision, while literally related to Plaintiff's purported § 1983 claims, did not toll the two-year statute of limitations for Plaintiff's non-malicious prosecution claims. For the foregoing reasons, Defendants' motion for summary judgment on Plaintiff's § 1983 claims, with the exception of his malicious prosecution claim, is GRANTED. Plaintiff's § 1983 claims based on violations of his First, Fifth, Sixth, Eighth, and Fourteenth Amendment rights and his rights secured by Article I, Paragraph 10 of the New Jersey Constitution are hereby DISMISSED with prejudice.[4]

**B.     Claims Arising Under 42 U.S.C. § 1985**

Plaintiff alleges that various Defendants violated 42 U.S.C. § 1985(3)[5] in Counts Two, Five, Eight, and Eleven of the Complaint. Defendants move for summary judgment on Counts Two, Five, Eight and Eleven on the basis that Plaintiff fails to state a claim based on 42 U.S.C. § 1985(3) because he fails to establish that he belongs to a proper class of persons covered by the statute and has not presented evidence of a conspiracy. (Def. Br. at 30-31).

42 U.S.C. § 1985(3) states:

> If two or more persons in any State or Territory conspire, or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, or for the purpose of

---

[4]This decision shall not be construed as a determination on the merits of these claims.

[5]Although Plaintiff has titled each count heading as "Violation of Civil Rights under 42 USCA § 1985(2)(3)," this Court determines that a liberal construction of the Complaint yields no more than four claims against Defendants for violation of 42 U.S.C. § 1985(3) *alone*. The Court determines that even after liberally construing the allegations contained in the Complaint, Plaintiff does not state a claim pursuant to 42 U.S.C. § 1985(2).

> preventing or hindering the constituted authorities of any State or
> Territory from giving or securing to all persons within such State
> or Territory the equal protection of the laws; or if two or more
> persons conspire to prevent by force, intimidation, or threat, any
> citizen who is lawfully entitled to vote, from giving his support or
> advocacy in a legal manner, toward or in favor of the election of
> any lawfully qualified person as an elector for President or Vice-
> President, or as a member of Congress of the United States; or to
> injure any citizen in person or property on account of such support
> or advocacy; in any case of conspiracy set forth in this section, if
> one or more persons engaged therein do, or cause to be done, any
> act in furtherance of the object of such conspiracy, whereby
> another is injured in his person or property, or deprived of having
> and exercising any right or privilege of a citizen of the United
> States, the party so injured or deprived may have an action for the
> recovery of damages, occasioned by such injury or deprivation,
> against any one or more of the conspirators.

To successfully state a claim under 42 U.S.C. § 1985(3), "a plaintiff must allege: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States." Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997) (citing Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)). Defendants argue that Plaintiff has failed to allege any racial or otherwise class-based, invidiously discriminatory animus or the existence of a conspiracy. In response, Plaintiff argues that he is a member of a religious class, and that a conspiracy existed among Defendants.

Since failure to meet any one of these elements is a sufficient basis for summary judgment, the Court will first address whether Plaintiff has demonstrated that he is a member of a protected class.

Plaintiff's Complaint does not contain a single allegation which relates to Plaintiff's race, national origin, or sex. However, his opposition brief claims that he is a member of a protected class as a follower of Judaism, and that Defendants' actions were motivated by his religion. (Pl. Br. Opp'n at 46). There, and only there, does Plaintiff allege that the alleged conspiracy among Defendants was "motivated by Plaintiff being Jewish." (Pl. Br. Opp'n at 46). Plaintiff does not introduce any evidence to prove that he is a member of this class, nor law which demonstrates that the Third Circuit has recognized religion as a protected class within the context of 42 U.S.C. § 1985(3) litigation.

The Third Circuit, in its interpretation of 42 U.S.C. § 1985(3), has recognized two guideposts for determining whether alleged animus towards a class satisfies the statute's requirements. In Lake, the Third Circuit, in holding that persons with handicaps were members of a protected class for purposes of 42 U.S.C. § 1985(3), noted that a court must examine whether a plaintiff belongs to a class that exhibits immutable characteristics for which it bears no responsibility and whether the class has suffered historically pervasive discrimination. Lake, 112 F.3d at 688 (citing Novotny v. Great Am. Fed. Sav. & Loan Ass'n, 584 F.2d 1235 (3d Cir. 1978)).

Here, Plaintiff makes no further argument regarding Defendants' alleged class-based invidiously discriminatory animus beyond bare allegations. Nor is there evidence in the record which tends to prove that Plaintiff is a member of the Jewish faith, or that Defendants' actions were motivated by such religious affiliation. Without more, the Court determines that Plaintiff has failed to carry his burden of proof on summary judgment. See  Anderson, 477 U.S. at 256-57 (The non-moving party cannot rest on mere allegations and must instead present actual evidence

that establishes a genuine issue as to a material fact for trial.). Plaintiff has not come forward with a genuine issue of material fact with respect to Defendants' motion for summary judgment on Counts Two, Five, Eight or Eleven. Defendants' motion with respect to these claims is hereby GRANTED.[6] Such claims are hereby DISMISSED with prejudice.

## C.     Claims Pursuant to 42 U.S.C. § 1986

Counts Three, Six, Nine, and Twelve of Plaintiff's Complaint allege that Defendants failed to prevent and/or covered up the conspiracy alleged in Counts Two, Five, Eight and Eleven in violation of 42 U.S.C. § 1986. Defendants move for summary judgment on Counts Three, Six, Nine, and Twelve on the basis that without demonstrating the existence of a violation of 42 U.S.C. § 1985(3), Plaintiff may not sustain a cause of action pursuant to 42 U.S.C. § 1986.

It is well-settled that liability under 42 U.S.C. § 1986 can be found only when liability exists under 42 U.S.C. § 1985.

> Section 1986 is a companion to § 1985(3) and provides the claimant with a cause of action against any person who, knowing that a violation of § 1985 is about to be committed and possessing power to prevent its occurrence, fails to take action to frustrate its execution. Because transgressions of § 1986 by definition depend on a preexisting violation of § 1985, if the claimant does not set forth a cause of action under the latter, its claim under the former necessarily must fail also.

Perez v. Cucci, 725 F. Supp. 209, 254 (D.N.J. 1989), aff'd, 898 F.2d 142 (3rd Cir. 1990) (quoting Rogin v. Bensalem Township, 616 F.2d 680, 696 (3rd Cir. 1980). Since this Court has

---

[6]To the extent that Plaintiff includes language in his opposition brief setting forth a separate claim for conspiracy pursuant to 42 U.S.C. §1983, which was not properly pled in his Complaint, the Court notes that summary judgment would nevertheless be granted to Defendants on such a claim, due to the statute of limitations analysis set forth supra.

determined <u>supra</u> that Plaintiff fails to sustain a claim pursuant to 42 U.S.C. § 1985(3), no cause of action can exist under 42 U.S.C. § 1986.

Accordingly, summary judgment as to Counts Three, Six, Nine, and Twelve is GRANTED to Defendants as Plaintiff has failed to meet the elements necessary for a 42 U.S.C. § 1985(3) conspiracy claim. Pursuant to <u>Perez</u>, without a viable cause of action under section 1985(3), no cause of action can survive under 42 U.S.C. § 1986. Therefore Counts Three, Six, Nine and Twelve are hereby DISMISSED with prejudice.

**D.    Malicious Prosecution**

Plaintiff sets forth both § 1983 and New Jersey state law claims for malicious prosecution. Plaintiff alleges that Defendants made false allegations which culminated in the institution of the criminal contempt proceedings and Plaintiff's ultimate convictions on contempt.

It appears to the Court that Plaintiff's malicious prosecution claims are necessarily based on the institution of the Second Contempt Proceeding by Champion, since that is the only contempt proceeding which was reversed by the New Jersey Supreme Court.[7] Defendants argue that Plaintiff's malicious prosecution claims should be dismissed because probable cause existed

---

[7]The Court notes that Defendants apparently concede that Plaintiff's claims for malicious prosecution are not time-barred because they did not ostensibly accrue until the January 29, 2002 reversal of Plaintiff's second contempt adjudication. However, this Court makes no determination on when Plaintiff's claims accrued since it is without the remainder of the state court record and is unable to determine whether a final judgment was ever entered either dismissing the charges against Plaintiff or whether the prosecution ever formally withdrew the charges of contempt. Despite the issues of fact surrounding this element of the claim, the Court will nevertheless proceed with an analysis of whether probable cause existed.

to initiate the Second Contempt Proceeding. Defendants argue that the New Jersey Supreme

Court reversed the Second Contempt Conviction based on its determination that Judge Marmo

improperly relied upon transcripts of proceedings before a different judge rather than hearing live

testimony and cross-examination by Plaintiff, not on a finding that the Court had been without

probable cause. Plaintiff asserts that Champion and the remaining Defendants did not have

probable cause to make an application to Judge Passero for criminal contempt.[8]

To state a § 1983 claim for malicious prosecution pursuant to the Fourth Amendment, a

plaintiff must establish the following elements:

> (1) the defendants initiated a criminal proceeding; (2) the
> criminal proceeding ended in plaintiff's favor; (3) the
> proceeding was initiated without probable cause; (4) the
> defendants acted maliciously or for purpose other than
> bringing the plaintiff to justice; (5) the plaintiff suffered
> deprivation of liberty consistent with the concept of seizure
> as a consequence of a legal proceeding.

Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003) (citing Donahue v. Gavin, 280

F.3d 371, 379 (3d Cir. 2002)). Under New Jersey law, the first four elements above comprise the

common law tort of malicious prosecution. Simone v. Golden Nugget Hotel & Casino, 844 F.2d

1031, 1035 (3d Cir. 1988) (citing Lind v. Schmid, 67 N.J. 255, 262 (1975)). See also Voytko v.

Ramada Inn of Atlantic City, 445 F. Supp. 315, 322 (D.N.J. 1978)). In light of this authority, a

---

[8]The Court notes that the only named Defendant responsible for the institution of the
Second Contempt Proceeding was Champion, the City counsel. Thus, the Court will constrain its
analysis of the existence of probable cause to whether Champion had probable cause for her
application. The Court notes that the probable cause analysis could be relevant, in theory, to
Judge Passero, in determining whether probable cause existed for his issuance of the order to
show cause pursuant to Rule 1:10-2, but Judge Passero is not a named party to this action and
accordingly, this issue is not before the Court at this time.

showing of probable cause will also defeat both a state and federal claim for malicious prosecution.

To find probable cause, there must be "reasonable grounds for suspicion supported by circumstances sufficiently strong in themselves to warrant an ordinarily cautious [person] in the belief that the accused is guilty of the offense with which he is charged." Trabal v. Wells Fargo Armored Serv. Corp., 269 F.3d 243, 249 (3d Cir. 2001) (citing Lind, 67 N.J. 255). The Supreme Court has established a "totality of the circumstances" standard that requires a "common sense" approach to determining whether probable cause exists. Sharrar v. Felsing, 128 F.3d 810, 818 (3d Cir. 1997) (citing Illinois v. Gates, 462 U.S. 213 (1983)).[9] This standard requires an inquiry into what objective facts were available to the arresting officers at the time of the arrest that would support a belief that an offense had been or was being committed. United States v. Thompson, 420 F.2d 536, 540 (3d Cir. 1970).

To determine whether Champion had probable cause to support an application for contempt, the Court evaluates the totality of circumstances or the facts available at the time of her application.

The Court determines that probable cause clearly existed at the time that the Second

_____

[9]The nature of the probable cause analysis is one of probabilities. Schneider v. Simonini, 163 N.J. 336, 361 (N.J. 2000) (citing Gates, 462 U.S. at 230-31, 238). New Jersey Courts have characterized the standard as a "well grounded" suspicion that an offense has been committed. State v. Burnett, 42 N.J. 377, 387, 201 A.2d 39 (1964); see also State v. Waltz, 61 N.J. 83, 87, 293 A.2d 167 (1972); State v. Kasabucki, 52 N.J. 110, 116, 244 A.2d 101 (1968); State v. Laws, 50 N.J. 159, 173, 233 A.2d 633 (1967), cert. denied, 393 U.S. 971, 89 S. Ct. 408, 21 L. Ed. 2d 384 (1968); State v. Davis, 50 N.J. 16, 23-25, 231 A.2d 793 (1967), cert. denied, 389 U.S. 1054, 88 S. Ct. 805, 19 L. Ed. 2d 852 (1968); State v. Dilley, 49 N.J. 460, 463-64, 231 A.2d 353 (1967).

Contempt Proceeding was initiated by Champion. Plaintiff has not demonstrated the existence of

a genuine issue of material fact with respect to probable cause, and in fact, appears to admit

many of the relevant facts which support this Court's determination. To reiterate, the Second

Contempt Proceeding was instituted based on allegations that certain of Plaintiff's actions

violated the July 17, 1996 TRO. The provisions alleged to have been violated and the bases for

the Rule 1:10-2 order to show cause are set forth in this Court's Opinion, supra, and will not be

repeated here in their entirety.

Plaintiff presents the following as undisputed facts[10] for the purposes of this motion:

(a)   Plaintiff seated in his parked grayish vehicle on the street

(b)   His agent, BLACK FEMALE, personally served subpoenas & two dollars witness
      fee on wives of Police Officers, at their home.

(c)   The wives weren't name[d], not a party, of the TRO, or litigation, having no
      standing, or restriction-prohibition imposed against Plaintiff.

(d)    [Plaintiff], after notifying Law Department, two hours in advance of his obtaining
      witnesses names, [t]hereafter appeared in City Hall, to record the witnesses
      names, in defense, against the litigation by the very same Defendants hereto

(e)   There was no violating imposed in the TRO warrant the fabricated malicious
      contempt conviction or incarceration.

(Pl. Br. Opp'n at 43). Even taking the facts presented by Plaintiff as true, this Court determines

that these statements clearly establish that Champion had probable cause to make an application

for criminal contempt to the court. Plaintiff argues that he did not violate the "letter" of the July

17, 1996 TRO when he parked across the street from the Gallaghers' home to observe a process

server serve Mrs. Gallagher with a subpoena. (Pl. Br. Opp'n at 43). However, this Court must use

---

[10]The Court notes that these statements are taken verbatim from Plaintiff's submissions to
the Court. All capitalization and punctuation is original.

a "common sense" approach to determining whether probable cause exists. <u>Sharrar</u>, 128 F.3d at 818 (citation omitted). Even taking Plaintiff's "facts" as true and viewing them objectively, this Court finds that there was ample evidence to support Champion's belief that Plaintiff's actions constituted a basis for contempt based on a violation of the July 17, 1996 TRO.

The July 17, 1996 TRO restrained Plaintiff from "going to the homes of any employees of the City of Paterson, including but not limited to Paterson police officers." (July 17, 1996 TRO). Plaintiff admits that he parked across the street from the homes of two Paterson police officers to observe his process server serve subpoenas on the officers' wives. However, Plaintiff insists that parking across the street does not constitute "going to the hom[e]," an act which would violate the July 17, 1996 TRO. However, after viewing the "totality of the circumstances," including Plaintiff's prior conviction of contempt for similar behavior and the underlying civil action based on his repeated harassment of City officials and employees, this Court finds that Champion had sufficient probable cause to institute the Second Contempt Proceeding against Laufgas. An ordinarily cautious person would believe that Plaintiff's admitted presence so close to the police officers' homes violated the July 17, 1996 TRO exposing Plaintiff to liability for contempt. <u>See</u> <u>Trabal</u>, 269 F.3d at 249. This Court determines that Champion had probable cause to institute the Second Contempt Proceeding. Plaintiff is thus unable to state a claim for malicious prosecution since he cannot prove one of the requisite elements. For these reasons, Defendants' motion for summary judgment on Plaintiff's federal and state law claims for malicious prosecution is GRANTED and these claims are DISMISSED with prejudice.

**D.      Relief Relating to the Restraints**

Plaintiff titles Count Seventeen of the Complaint "Injunctive Relief." (Compl. ¶¶ 324-

18

30). This count alleges that the Final Restraining Order issued by Judge Passero on May 5, 1998 violates Plaintiff's "constitutional protection of Freedom of speech, assembly, association, [access] to government redress, [access] to the court and Due Process and Equal Protection." (Compl. ¶ 326). Plaintiff alleges that "equitable relief is necessary to prevent continuing violations of constitutional [] rights of Plaintiff." (Compl. ¶ 330). Thus, it first appears that Plaintiff seeks an injunction enjoining the effect of the final restraints entered by Judge Passero on May 5, 1998. However, in Plaintiff's final paragraph of Count Seventeen, while Plaintiff states a request that this Court declare the Final Restraining Order void, he also seeks compensatory and punitive damages against Defendants in conjunction with this count. (Compl. at 53). Since this Court is required to liberally construe the Complaint because of Plaintiff's pro se status, the Court determines that Count Seventeen sets forth two claims: one for injunctive relief and a federal claim for violation of Plaintiff's civil rights.

Before the Court turns to the arguments of the parties, it must first determine whether it has proper subject matter jurisdiction over the claims set forth in Count Seventeen. Federal Rule of Civil Procedure 12(h)(3) states that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Id. Thus, the Court possesses the authority to conduct a sua sponte inquiry to determine whether subject matter jurisdiction exists. See Trent Realty Assocs. v. First Fed. Sav. & Loan Ass'n of Philadelphia, 657 F.2d 29, 36 (3d Cir. 1981) ("A federal court is bound to consider its own jurisdiction preliminary to consideration of the merits . . . Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the action must be dismissed.").

19

1.    **The Rooker-Feldman Doctrine**

The Rooker-Feldman doctrine, which derives its name from the Supreme Court's

decisions in Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and District of Columbia Court of

Appeals v. Feldman, 460 U.S. 462 (1983), gives only the United States Supreme Court, and not

the lower federal courts, the proper jurisdiction to review a state court decision. See, e.g., In re

Diet Drugs Prods. Liab. Litig., 282 F.3d 220, 240 (3d Cir. 2002); Parkview Assoc. P'ship v. City

of Lebanon, 225 F.3d 321, 324 (3d Cir. 2000); E.B. v. Verniero, 119 F.3d 1077, 1090 (3d Cir.

1997). This doctrine reflects the belief that a federal district court is one of original jurisdiction

and thereby lacks subject matter jurisdiction to entertain appeals from state courts. McCurdy v.

Esmonde, 2003 WL 223412, at *5 (E.D. Pa. Jan. 30, 2003).

Under Rooker-Feldman, federal district courts will not hear claims that were either

"actually litigated" in state court prior to the filing of the federal suit, or claims that are

"inextricably intertwined" with a state court's adjudication. Parkview Assoc., 225 F.3d at 325.

Courts will find that a case was "actually litigated" in state court if both the parties and the court

have already addressed the issue. Desi's Pizza, Inc. v. City of Wilkes-Barre, 321 F.3d 411, 420-

21 (3d Cir. 2003). A claim is "inextricably intertwined" with a state court ruling when the relief

requested in federal court requires determining that the state court's decision is "erroneous" or

would render the judgment "void." FOCUS v. Allegheny County Court of Common Pleas, 75

F.3d 834, 840 (3d Cir. 1996); Centifanti v. Nix, 865 F.2d 1422, 1430 (3d Cir. 1989). This

situation would arise, for example, if granting the Plaintiff relief would require the federal court

to conclude that the state court made an incorrect factual or legal determination. Desi's Pizza,

Inc., 321 F.3d at 421. A finding that Rooker-Feldman applies to bar a litigant's federal claims

20

divests a district court of subject matter jurisdiction over those claims. Guarino v. Larsen, 11 F.3d 1151, 1156-57 (3d Cir.1993).

Count Seventeen challenges the constitutionality of the Final Restraining Order. Plaintiff alleges that the Order violates his constitutional rights to free speech, assembly, access to the courts, due process, and equal protection of the laws. Plaintiff also requests this Court to void the Final Restraining Order. Putting aside whether Plaintiff alleges valid claims, this Court must first determine whether such claims are inextricably intertwined with the state court adjudication, thus barring this Court from consideration for lack of subject matter jurisdiction. Such a determination requires a two-step analysis. First, the Court must determine whether the state court proceeding was an adjudication, rather than a legislative, ministerial, or administrative action. See Feldman, 460 U.S. at 478. Next, the Court must determine whether Plaintiff's federal claims and claim for injunctive relief are inextricably intertwined with the state court adjudication.

2.    **Analysis**

a.    *Was issuance of the Final Restraining Order an adjudication?*

This Court finds that Judge Passero's issuance of the Final Restraining Order on May 5, 1998 is "judicial in nature." See Feldman, 460 U.S. at 476. The Final Restraining Order finalized the restraints issued in the July 17, 1996 TRO and was issued following extensive testimony from witnesses of both plaintiffs and Laufgas. There is no evidence in the record to indicate that the proceedings were anything but judicial in nature or that the Final Restraining Order was anything other than an adjudication on the merits of the plaintiffs' complaint which sought such

restraints.[11]

> b.   *Are Plaintiff's claims inextricably intertwined with the adjudication?*

Since this Court determines that the proceedings before Judge Passero within the underlying civil action constituted an adjudication, the Court must next determine whether Plaintiff's claims presented in Count Seventeen are inextricably intertwined with the decision of Judge Passero to issue the Final Restraining Order.

"A claim is inextricably intertwined with the state court decision when 'federal relief can only be predicated upon a conviction that the state court was wrong.'" Bolus v. Cappy, 141 Fed. Appx. 63, 64 (3d Cir. 2005) (quoting Marran v. Marran, 376 F.3d 143, 150 (3d Cir. 2004)). Stated differently, "[i]f the relief requested in the federal action requires determining that the state court's decision is wrong or would void the state court's ruling, then the issues are inextricably intertwined and the district court has no subject matter jurisdiction to hear the suit." FOCUS, 75 F.3d at 840 (quoting Charchenko v. City of Stillwater, 47 F.3d 981, 983 (8th Cir. 1995)).

Here, Plaintiff alleges that the language contained in the Final Restraining Order violated his constitutional rights. In order for this Court to determine whether Plaintiff states a valid claim, it would have to determine that Judge Passero erroneously issued the restraints without consideration of Plaintiff's rights. New Jersey Rules of Civil Practice govern the form and scope of injunctions and restraining orders. Rule 4:52-4 states that "[e]very order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms;

---

[11]The underlying state civil action was brought by Vincent Amoresano, Chief of Police for the City of Paterson, and the Passaic County Prosecutor's Office and named Laufgas as the sole defendant.

shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained . . . ." Further, it is well-settled that Chancery Courts, and thus Judge Passero, possess the authority to issue injunctive relief. Horizon Health Center v. Felicissimo, 135 N.J. 126, 137 (1994). Thus, if this Court were to evaluate whether the restraints imposed in the Final Restraining Order were over-broad or vague in violation of Plaintiff's First Amendment rights, or whether they impeded Plaintiff's right to access to the courts, or his due process rights, this Court would necessarily be evaluating whether Judge Passero improperly implemented the Final Restraining Order. Further, to award Plaintiff the injunctive relief he seeks with respect to the Final Restraining Order, this Court would clearly have to interfere with a state court adjudication and act in an appellate function to invalidate the Final Restraining Order.[12]

Since this Court determines that the Final Restraining Order constitutes an adjudication, and that Plaintiff's claims for constitutional violations as well as for injunctive relief are inextricably intertwined with such Order, these claims are necessarily barred by the Rooker-Feldman Doctrine.[13] This Court is without subject matter jurisdiction to hear these claims. This

---

[12]There is no indication in the record or the parties' submissions that Plaintiff has specifically appealed the content of the Final Restraining Order or raised his constitutional claims in state court. The New Jersey Supreme Court noted in its Opinion that"[f]or completeness, we note that the Appellate Division also concluded that certain provisions of the final restraining order are overly broad, and directed that the order be modified. That aspect of the panel's disposition is not before us for review." (Supreme Court Op. at 549). There is nothing further in this record to indicate whether a lower state court ever undertook a revision of the Final Restraining Order. However, this does not change the Court's determination that Plaintiff's claims are inextricably intertwined with the Final Restraining Order.

[13]The Court notes that even if Plaintiff were to argue that the Final Restraining Order was not an order of the state's highest court, thus barring application of the Rooker-Feldman Doctrine, this argument would fail. The Third Circuit has interpreted Rooker-Feldman to apply to final judgments of lower state courts in addition to judgments of the highest state court. FOCUS, 75 F.3d at 840 (citing Port Auth. Benevolent Ass'n v. Port. Auth., 973 F.2d 169, 178 (3d Cir.

Court will thus GRANT summary judgment to Defendants on Count Seventeen. Count

Seventeen is DISMISSED with prejudice for lack of subject matter jurisdiction.

**E.      State Law Claims**

The Court must next determine whether it will retain jurisdiction over the supplemental

remaining state law claims, after dismissing those claims over which the Court has original

jurisdiction. Section 1367 (c)(2) of Title 28 provides, in pertinent part that "[t]he district courts

may decline to exercise supplemental jurisdiction over a claim under subsection (a) if ... the

district court has dismissed  all claims over which it has original jurisdiction...."  Thus, this Court

has discretion to decline jurisdiction over the supplemental claims the after Court has dismissed

all claims over which it had original jurisdiction. New Rock Asset Partners, L.P. v. Preferred

Entity Advancements, Inc., 101 F.3d 1492, 1508 (3d Cir. 1993); Growth Horizons, Inc. v.

Delaware County, Pa., 983 F.2d 1277, 1284 (3d Cir. 1993) ("In making its determination, the

district court should take into account generally accepted principles of 'judicial economy,

convenience, and fairness to the litigants'") (quoting United Mine Workers v. Gibbs, 383 U.S.

715, 726 (1966)); Freund v. Florio, 795 F. Supp. 702, 710 (D.N.J. 1992) ("[A]t this early stage in

the litigation, dismissal of the pendent state claims in a federal forum will result in neither a

waste of judicial resources nor prejudice to the parties).

Plaintiff alleges various state law claims, including claims of negligent infliction of

emotional distress (Count Fourteen), abuse of process (Count Fifteen), and Breach of Duty

(Count Sixteen). This Court has previously dismissed all remaining claims accruing under federal

law, as well as Plaintiff's state law claim for malicious prosecution. This Court will now exercise

---

1992)).

its discretion pursuant to 28 U.S.C. § 1367(c)(2) and will decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. Counts Fourteen, Fifteen, and Sixteen hereby DISMISSED with prejudice.[14]

## CONCLUSION

For the foregoing reasons, this Court will GRANT Defendants' motion for summary judgment. Plaintiffs' Complaint is hereby DISMISSED WITH PREJUDICE in its entirety.[15] An appropriate Order accompanies this Opinion.


DATED: June 29, 2006                          _/s/ Jose L. Linares_____
                                              United States District Judge

---

[14]The Court notes that this decision shall not operate as a determination on the merits of any of these claims, or as a determination that a state law cause of action for breach of duty exists.

[15]In Plaintiff's submissions to the Court, he makes arguments regarding issues with interrogatories in this matter. (Pl. Br. Opp'n at 51-52). These alleged problems are not before the Court at this time, but rather relate to prior determinations of this Court's Magistrate Judge, the Honorable Ronald J. Hedges. Since Plaintiff's time to appeal these determinations of Judge Hedges has expired, the Court will disregard any arguments relating to interrogatories.